ROBERT HUGUNIN *et al.*, plaintiffs in error, v. CHARLES R. STARKWEATHER, defendant in error.

*Error to Cook County Court.*

H. and K. purchased of C. certain lands, and executed their individual notes to C. and mortgages to secure the payment thereof, and on the same day, the notes were given up and an agreement in writing entered into by them, wherein H. and K. stipulated that they would pay the amount of said notes upon certain notes of C. to O. and others given for the same lands ; and C., on his part, agreed that, upon their making such payments, the same should be applied upon, and be a discharge of their respective mortgages. C. subsequently assigned the agreement and the mortgages to M., who further assigned them to S. The latter filed a bill to foreclose, the payments not being made, to which there was a demurrer, which was overruled, and a decree *pro confesso,* &c., entered : *Held,* that it was the evident intention of the parties that the mortgages should still remain as subsisting securities for the payment of the debt; that it was not the intention to give to O. and others any better security, but simply to provide for their own convenience in having C's liabilities discharged in the manner prescribed in the agreement.

Where a reference was made to a Master to compute the amount due upon certain notes, and he made his report to the Court, when no objections were made to its confirmation, and it was accordingly confirmed, but objections were made in the Supreme Court, it was *held* that they could not be inquired into by the latter tribunal.

BILL IN CHANCERY to foreclose a mortgage, &c., filed by the defendant in error against the plaintiffs in error, in the Cook County Court, and heard before the Hon. Hugh T. Dickey, at the October Term, 1848. The defendant, Hu-

gunin, demurred to the bill, and the demurrer was overruled, and a decree *pro confesso,* that the defendant pay the complainant the sum of $2475·89, &c., reported by the Master, and in default thereof, that the mortgaged premises be sold, &c.

A statement of the material facts appears in the Opinion of the Court.

*E. W. Tracy,* for the plaintiffs in error.

1. The giving up the note which the mortgage was given to secure, and taking in lieu of it an agreement to pay in different manner and at different times, operated to cancel the mortgage : And if the parties supposed otherwise, and supposed that the mortgage would continue in force as security to the new agreement, it was a mistake of law which a Court of Equity will not mend.

2. The agreement set forth in the bill was an assignment of a debt by Case to Ogden, and Taylor, and McGregor, (his creditors.) If the mortgage operated to secure the performance of this agreement, then it must be considered as assigned to Ogden and Taylor and McGregor, the debt being the principal and the mortgage the incident, and the assignment of the debt carrying with it the mortgage as the incident to it, and consequently the equity is in Ogden and Taylor and McGregor, and they are the proper complainants. *Jackson* v. *Blodgett,* 5 Cowen, 202.

3. The agreement itself being an assignment could not be assigned by Case so as to give his assignee any right of action.

4. If the mortgage has any force, it is to secure the payment of the note mentioned in the agreement, and the bill does not state that those notes are unpaid.

5. Unless the complainant or his assignor has paid the notes mentioned in the agreement, he cannot combine the equities in himself.

6. The decree should be for the amount of the notes mentioned in the agreement remaining unpaid, if for anything.

*J. H. Collins*, for the defendant in error.

I. The surrender of the note was not an extinguishment of the mortgage.

1. It was not so intended between the parties, but a new arrangement was made by which Hugunin agreed to pay the same debt to Ogden, Taylor & McGregor, instead of Case.

2. The new agreement was substituted in the place of the note, and the new agreement *expressly* recognizes the mortgage as a *valid subsisting debt,* and provides for the payment of it, in these words : "Now, therefore, I, Robert Hugunin, do hereby agree with said Case to pay the said $1,330·83 *secured by my said mortgage,* by paying one third part of said notes," &c.

II. The defendant in error was entitled to a decree for the sale of the premises on the ground of a lien for the purchase money.

The agreement set forth in the bill shows that the debt for which the decree of foreclosure was granted was the consideration agreed to be paid by Hugunin to Case for the land described in the mortgage. It recites : "And whereas the said Calvin Case on the 13th day of July, 1836, conveyed one undivided third part of said lot of land to Robert Hugunin, and on the same day he also conveyed one undivided third of said lot of land to Walter Kimball, in consideration of which conveyances, they respectively executed to the said Case *as security for the purchase money,* their individual *mortgages* on said land for $1,330·83."

The rule of law in relation to real estate is that the vendor has, without any express agreement for that purpose, a lien on the premises conveyed, even after possession thereof is delivered to the purchaser, for the purchase money, provided he has not taken a distinct and independent security therefor, and the land has not passed by a *bona fide* sale to a third person. 6 Wend. 82 ; 3 Sug. Vend. 124, §§ 18, 20, 22.

Upon the whole, therefore, it seems quite clear, that taking a bond or a note for the purchase money, or any part of

it, will not discharge the vendor's equitable lien on the estate. Ibid. 127, § 30.

The assignee of a bond for the purchase money of land has a lien on the land, if the assignor had. 1 Barb. & Harr. Dig. 188, § 22; 4 Littell, 289.

The assignee of a bond not negotiable may sue in a Court of Equity, but must always show that the assignment was for value. 1 Barb. & Harr. Dig. 196, § 83.

The Opinion of the Court was delivered by

CATON, J. Hugunin, on the 13th of July, 1836, executed his note and mortgage to Case, to secure the payment of the sum of $1330·83, and afterwards on the same day, by the agreement of the parties, the note was given up and in lieu thereof, Hugunin entered into an agreement with Case, to pay the same amount of money to Ogden, Taylor and McGregor, as follows:

"Whereas William B. Ogden, William Taylor and Alexander McGregor of the town of Chicago, Cook county and State of Illinois on the first day of July 1836, conveyed to Calvin Case 15 $\frac{77}{100}$ acres of land being part of the south fraction of the north west quarter of section numbered twenty eight, township thirty nine north, range fourteen east of the third principal meridian in Chicago land district, as by reference to said deed will more fully appear. And whereas the said Calvin Case as security of the consideration of the said conveyance executed his three individual notes to William Taylor and William B. Ogden each for $294·53, each note due two, three and four years after date with interest at seven per cent. payable annually. Also, his three individual notes of $499·06 each to Alexander McGregor, due at the same time of those to Taylor, all of the above notes payable at the Branch of the State Bank of Illinois in Chicago. Also, to McGregor, his (Case's) two indorsed notes, the one due eight months after date for $261·25 and the other for $267·14 due twelve months after date and both negotiable and payable at the Branch of the State Bank

in Illinois in Chicago; also to William Taylor his two in-
dorsed notes, the one for $130·36, due eight months after
date and the other for $133·57 due twelve months after
date; also to William B. Ogden his two indorsed notes, the
one for $130·36 due eight months after date, and the other
for $133·57 due twelve months after date, the notes to both
Taylor and Ogden negotiable and payable at the Branch of
the State Bank of Illinois in Chicago; and whereas the said
Calvin Case on the 13th day of July 1836 conveyed one un-
divided third of said lot of land to Robert Hugunin, and on
the same day he also conveyed one undivided third of said lot
of land to Walter Kimball, in consideration of which con-
veyances, they respectively executed to the said Case as
security for the purchase money their individual mortgages
on the said land for $1330·83.

Now, therefore, I Robert Hugunin do hereby agree with
the said Case to pay the said $1330·83 secured by my said
mortgage by paying one third part of the said notes given by
the said Case as aforesaid, when they shall fall due, and I, the
said Walter Kimball do hereby agree with the said Case to
pay the said $1330·83 secured by my said mortgage by
paying one third part of the said ‚notes given by said Case
as aforesaid when they shall fall due, and the said Case hereby
agrees with the said Kimball and Hugunin, that upon their
making such payment as aforesaid, the same shall apply
upon, and be a discharge of their respective mortgages.

In witness whereof the said parties have hereunto sub-
scribed their names, this 13th day of July, 1836.

(Signed)                    C. Case,
                            Rob't. Hugunin.
                            Walter Kimball."

In 1839, Case assigned this agreement and the mortgage
to McGregor, and in 1846 he assigned both to the com-
plainant. The bill further shows that about the sum of
$1330·83, the principal sum mentioned in the condition of
the mortgage, with interest thereon at the rate of seven per
centum per annum from the 13th day of July, 1836, still

remains due and unpaid, and asks a foreclosure of the mortgage. A demurrer was filed to the bill, which was overruled by the Court, and a decree, ordering the bill to be taken as confessed, entered, and a reference made to the Master to compute the amount due upon the mortgage. Upon the coming in and confirmation of the report, a decree was entered ordering the premises to be sold, &c.

It is insisted on the part of the defendant, Hugunin, that by giving up the note which was given for the same sum of money to secure which the mortgage was executed, the mortgage was canceled, and the party must rely alone upon the special agreement, which was executed in lieu of the note. This may be so unless it is manifest that the parties intended that the mortgage should still remain a subsisting security for the payment of the debt. When we examine this agreement with a view to ascertain the intent of the parties, no doubt can be left on that subject. The agreement recites certain notes which Case owed to Ogden, Taylor, and McGregor, and the execution of the mortgage as security for the specified sum, and then proceeds: "I, Robert Hugunin, do hereby agree with the said Case to pay the said $1,330·83, secured by my said mortgage, by paying one-third part of the said notes given by the said Case as aforesaid when they shall fall due." And Case, on his part, agrees that such payments, when made, shall apply upon, and be in discharge of, said mortgage. It was certainly competent for the parties, by their agreement, to change the mode, or particular terms of payment, or even amount, and still retain the mortgage as security for the sum due, if they thought proper. Such an agreement was not immoral, and it violated no law; and it would be hard to assign any reason why parties capable of contracting might not enter into such an agreement. If they have not made such an agreement, then certainly a mistaken supposition on their part that they had made such an one can avail nothing. The question is, what is the fair construction and legal effect of this agreement? That depends upon the intent of the

parties, as expressed in the agreement. The mortgage is spoken of as still subsisting as a valid security for the payment of the $1,330·83, and that payments made, according to the stipulations of the agreement, should apply upon, and be in discharge of, the mortgage. Should we hold that this mortgage was intended to be canceled by that very agreement, I am at a loss to know what meaning we should attach to these expressions. The intent of the parties that the mortgage should continue a subsisting security is so manifest from the whole tenor of the agreement, that it neither requires argument or construction. If such was the intention of the parties, as manifested in the writing, then that is their agreement.

Again it is said, that if this agreement did not extinguish the mortgage, then it operated as an assignment of it to Ogden, Taylor, and McGregor. But this was not the intent of the parties nor the legal effect of the agreement. It was not their intention to give Case's creditors any better security, but it was simply to provide for their own convenience, that Hugunin should pay the money due to Case, to be applied on those outstanding notes. His failure to pay Ogden and others as he had agreed, gave them no right of action either upon the agreement or the mortgage, nor did the payment of those notes by Case after their maturity extinguish the mortgage. The mortgage was not an incident to those notes, nor to secure them, but it was to secure the money mentioned in its condition, while the agreement authorized the mortgagor to pay the amount to other parties on account of Case. If Hugunin has performed his agreement by making the payments as he has stipulated, then he should have set that up as a defence; but not having performed that agreement, the mortgage is still subsisting, and the party has a right to have it foreclosed.

Whether the decree is for too much or too little, is not before us. It was referred to a Master to compute the amount due. He made his report, to which no exceptions were taken. It was ratified and confirmed by the Court,

and cannot now be inquired into. It is hardly necessary to say that this is not the proper place to take an exception to the report of a Master for the first time. Indeed, the only question before us is whether the demurrer was properly overruled or not.

We find no error in the record, and the decree of the County Court is affirmed with costs.

*Decree affirmed.*